IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                               No. 1:19-cr-10041-JDB-1

BRITNEY PETWAY AND
CHARLES ALSTON,

    Defendants.

___

ORDER DENYING DEFENDANT BRITNEY PETWAY'S MOTION TO DISMISS OR
STRIKE SURPLUSAGE FROM THE INDICTMENT
___

Before the Court is the May 15, 2019, motion of Defendant, Britney Petway, to dismiss or strike as surplusage certain language from the indictment in this matter. (Docket Entry "D.E." 63.) The Government has responded. (D.E. 78.)

**BACKGROUND**

Petway and her co-Defendant, Charles Alston, were indicted by a grand jury on April 15, 2019, for conspiring to unlawfully distribute and dispense controlled substances, in violation of 21 U.S.C. § 846. (D.E. 4.) In the indictment, the Government maintains that Petway prescribed Schedule II and IV controlled substances outside the usual scope of professional practice and without a legitimate medical purpose during her time as a nurse practitioner at Superior Health and Wellness Clinic, LLC in Jackson, Tennessee, and that, during these events, Alston was her supervising physician. (*Id.* ¶ 1–2.) The indictment avers that Petway abused her privileges as a medical practitioner to generate large profits from the prescriptions for the Defendants' personal

1

use and benefit. (*Id.* ¶ 18–25.) Alston is allegedly culpable by lending an appearance of legitimacy to Petway's clinic, yet approving her misuse of the prescription privileges. (*Id.*)

The indictment does not set forth these facts alone. It also details the history and purpose of the Controlled Services Act; descriptions of the drugs the Defendants are allegedly responsible for distributing illegally; and discusses state and federal regulations that are relevant to Defendants' conduct. (*Id.* ¶ 3–15.) Some of this information is included under a section of the document titled "Manner and Means." (*Id.* ¶ 19–25.) This is the portion of the indictment with which Petway takes issue. (D.E. 63.) Specifically, she points to Paragraph 24, which states: "Petway and Alston were required under Tennessee law to register Superior Health as a pain management clinic with the State of Tennessee, but did not." (*Id.* at PageID 133–34 (quoting D.E. 4 ¶ 24).) Defendant notes that the failure to comply with this law "carries its own administrative and criminal penalties" and contends that "a state regulatory infraction is insufficient to establish action outside the course of professional practice needed to support a controlled substance charge against a medical professional otherwise authorized to prescribe narcotics." (*Id.* at Page ID 134–35.) Additionally, she posits that the regulation and the federal statute conflict with one another and, therefore, the more specific state regulation should control over the general federal law criminalizing the distribution of controlled substances. (*Id.* at PageID 135.) At bottom, Petway's argument is that permitting the Government's inclusion of this paragraph in the indictment is tantamount to allowing the federal criminalization of a state regulation, which would amount to the usurpation of state police power. (*Id.* at PageID 135–36.)

The Government responds that this argument is "fundamentally flawed" because "it appears to be premised on the notion that acts underlying a conspiracy must themselves be crimes." (D.E. 78 at PageID 201.) The Government notes that, "even in cases where [it] must prove an

overt act, the Sixth Circuit has instructed that such an act 'need not itself be a crime.'" (*Id.* at PageID 202 (citing *United States v. Bradley*, 917 F.3d 493, 505 (6th Cir. 2019)).) The Government argues that the paragraph does not stand in isolation, but rather is one of a number of facts from which a jury could draw a reasonable inference that the Defendants were involved in an illegal conspiracy. (*Id.* at PageID 202–03.) It concluded its brief by pointing out that Petway had failed to argue that the paragraph was irrelevant or prejudicial, which is what is required to have language in an indictment stricken. (*Id.* at PageID 203–04.)

## ANALYSIS

Fed. R. Crim. P. 7(c)(1) provides that "[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government. It need not contain a formal introduction or conclusion," and "[a] count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means." Fed. R. Crim. P. 12(b)(3)(B)(v) permits a defendant to move to dismiss an indictment if it fails "to state an offense," while Fed. R. Crim. P. 7(d) allows a defendant to move to strike any "surplusage" from the indictment.

*Motion to Dismiss Under Fed. R. Crim. P. 12*

"[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which [s]he must defend, and, second, enables [her] to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Anderson*, 605 F.3d 404, 411 (2010) (alteration in original) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). Although, "the language of the statute may be used in the general description of the [offense], . . . it must be accompanied with such a statement of the facts and

3

circumstances as will inform the accused of the specific [offense], coming under the general description, with which he is charged." *Hamling*, 418 U.S. at 117–18.

The indictment in this case sets forth the language of the statute alleged to have been violated in charging Defendants, and it furnishes a statement of facts and circumstances under which the Government believes Defendants committed the crime. (D.E. 4 ¶ 17 ("From in or around July 2016 through in or around April 2019, in the Western District of Tennessee, and elsewhere, the defendants . . . , did knowingly and intentionally combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury, to violate 21, United States Code, Section 841(a)(1), that is, to knowingly and intentionally unlawfully distribute and dispense, mixtures and substances containing a detectable amount of Schedule II controlled substances, including Oxycodone and Hydrocodone, not for a legitimate medical purpose and outside the scope of professional practice. All in violation of Title 21, United States Code, Sections 846.")) *See also generally* (*Id.* (describing the manner of the violation).) Therefore, by definition, it sufficiently states a defense, and Defendant's motion to dismiss is DENIED.[1]

*Motion to Strike Surplusage Under Fed. R. Crim. P. 7(d)*

Whether to strike surplusage is subject to the district court's discretion. *United States v. Williams*, 158 F. App'x 651, 654 (6th Cir. 2005); *see also United States v. Emuegbunam*, 268 F.3d 377, 394 (6th Cir. 2001) (same); *United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993) (same). "[A] motion to strike surplusage should be granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." *United States v. Montgomery*, 10 F.

---

[1] Petway's argument that the state regulation and federal statute conflict produces a false dichotomy. Simply because the two deal with similar subject matter does not mean the respective governments must select one scheme by which to police this alleged conduct. *Compare, e.g.*, Tenn. Code Ann. § 39-17-309 *with* 18 U.S.C. § 249 (both criminalizing hate crimes).

Supp. 3d 801, 816 (W.D. Tenn. 2014) (alteration in original) (quoting 1 Charles Alan Wright & Andrew D. Leipold, *Federal Practice and Procedure* § 128, at 643 (4th ed.2008)); *accord United States v. Neller*, 229 F.3d 1154, 2000 WL 1234330, at *2 (6th Cir. Aug. 25, 2000) (table) (per curiam). "Rule 7(d) has been strictly construed against striking surplusage." *United States v. Kemper*, 503 F.2d 327, 329 (6th Cir. 1974) (citing 1 Wright, *supra*, § 127 (1969)). Furthermore, "if the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)." *Moss*, 9 F.3d at 543 (citing *United States v. Thomas*, 875 F.2d 559, 562 n.2 (6th Cir. 1989).

As the Government points out, Petway's motion does not expressly address the issues of the relevance or prejudice of Paragraph 24. (D.E. 78 at PageID 203–04.) Therefore, considering the strict standard set forth above, as well as Defendant's lack of legal support, the motion to strike is also DENIED.

IT IS SO ORDERED this 28th day of June, 2019.

s/ J. DANIEL BREEN<br>
UNITED STATES DISTRICT JUDGE